IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LAWRENCE GAINES, | ) | |
|---|---|---|
| | ) | Civil Action No. 2: 13-cv-0471 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Arthur J. Schwab |
| | ) | |
| PSYCHIATRIST DR. SENA and | ) | United States Magistrate Judge |
| MENTAL HEALTH MANAGEMENT, | ) | Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 16), which has been converted into a Motion for Summary Judgment, be granted.

II.     REPORT

      A.     *Relevant and Material Facts*

Plaintiff, Lawrence Gaines, is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") confined at SCI-Pittsburgh. He commenced this action with the filing of a complaint. The Court initially denied his motion to proceed *in forma pauperis* for failure to include the appropriate financial documentation, but the motion was later granted upon Plaintiff's compliance with the statutory requirements. (ECF Nos. 1, 2, and 7.)

Plaintiff brings his claims under 42 U.S.C. § 1983, the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101, *et seq.*, and common law claims of medical malpractice / negligence, and "state law vicarious liability / respondent superior." Named as defendants are Psychiatrist Robert J. Sena, the psychiatrist at SCI-Pittsburgh, and Mental Health Management, Dr. Sena's employer and the private mental health provider servicing SCI-

Pittsburgh inmates. Plaintiff alleges, *inter alia*, that Dr. Sena was deliberately indifferent to his medical needs, in violation of the Eighth Amendment, because even though Dr. Sena was aware of his many psychological impairments, he took Plaintiff off his medications, namely Wellbutrin and Benadryl, in September 2012, which reportedly led to Plaintiff's attempted suicide. As to Mental Health Management, Plaintiff alleges that it permitted Dr. Sena to maintain his improper practice of "tampering with medications."

Defendants filed a motion to dismiss arguing that Plaintiff failed to exhaust his administrative remedies. Because Defendants presented material outside of the Complaint, the Court converted the motion to dismiss into a motion for summary judgment, and allowed the parties time to submit additional briefing and evidence. The issues now have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 20, 21, 22, 25, 28, and 29.) The matter is ripe for disposition.

Upon careful consideration, the Court finds that the summary judgment record clearly supports Defendants' assertion that Plaintiff failed to exhaust his administrative remedies. As discussed below, none of Plaintiff's explanations for his failure are sufficient to excuse the exhaustion requirement and it is, therefore, recommended that summary judgment in Defendants' favor is warranted.

B. *Standard of Review*[1]

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the

---

[1] Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972).

2

party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. .*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell,* 2010 WL 2089639, at * (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

    C.    *The Prison Litigation Reform Act*

        1.    <u>The Exhaustion Requirement</u>

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the Act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." *Small v. Camden County*, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[2] The requirement that an inmate exhaust administrative remedies applies to all inmate lawsuits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n. 12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

---

[2] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.' " *Small*, 728 F.3d at 270 (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). *See also Nyhuis v. Reno*, 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id*. at 83.[3]

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan,* 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of

---

[3] *See also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ ... ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

5

Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

2. The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218. *See also Spruill*, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC–ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within fifteen working days from the date the grievance was entered into the Automated Inmate Grievance System. Second, the inmate must timely submit a written appeal to intermediate review within fifteen working days, and again the inmate receives

a written response within fifteen working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. *Spruill,* 372 F.3d at 234.

    C.    *Discussion*

Defendants maintain that Plaintiff never filed any grievance forms with respect to the allegations raised in this litigation. In response, Plaintiff does not disagree with Defendants' contention that he must exhaust administrative remedies prior to bringing suit, and he does not dispute that he must properly exhaust his administrative remedies. Instead, Plaintiff has offered a series of contradictory explanations for why he was not able to exhaust. For the following reasons, the Court finds that none of his explanations support a finding that the administrative process was not available to Plaintiff and thus Plaintiff has not set forth a compelling reason to excuse compliance with the exhaustion requirement.

First, Plaintiff argues that he submitted two grievance forms, dated September 18, 2012, and October 22, 2012, respectively, Exhibits 1 and 2 to his Complaint, but that he was prevented from exhausting the grievance process because the DOC failed to respond to either of these grievances. Also attached to the Complaint is an Inmate Request for Staff Member (DC-135A) dated November 18, 2012, Exhibit 3, to which, according to Plaintiff, DOC also failed to respond. Defendants contend that these documents were never filed with the institution. In support, they have produced copies of Plaintiff's grievance file from SCI-Pittsburgh, a Declaration of Carol Scire, SCI-Pittsburgh's Grievance Coordinator, and a letter from Keri

7

Moore, Grievance Review Officer at the DOC's Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). This documentation reflects that Plaintiff has filed the following four (4) grievances while at SCI-Pittsburgh: (1) Grievance No. 459674, dated May 15, 2013; (2) Grievance No. 460093, dated May 17, 2013; (3) Grievance No. 465906 dated June 27, 2013; and (4) Grievance No. 467757 dated July 10, 2013. None of these grievances relate to the allegations in this lawsuit and, more specifically, none of these grievances mention Dr. Sena.

Moreover, in her Declaration Ms. Scire certifies the following:

9. Grievances are filed by depositing them in a locked box on each unit from which the grievances are retrieved on a daily basis and brought to me for processing.

10. I personal pick up the grievances every from the Grievance Boxes, in front of the Inmate Dining Hall, Restricted Housing Unit and Secure Special Needs Unit. . . .

11. When the grievances are collected from the filing boxes they are placed in my mailbox, which I empty every day. Each grievance is stamped with a date stamp which reflects the date it was received by our office and thus the date it was actually processed. The date the inmate writes on the grievance may not be the date it was filed, as the inmate can write a grievance and hold on to it before they drop it in the grievance box.

12. Each grievance is assigned a number which I, personally, write in the box in the upper right hand corner of the form. . .

14. At the time that I review and assign the grievance officer to investigate and respond to each grievance, I also initial it at the bottom and date it in the following space on the form.

15. The grievances at Exhibits 1 and 2 were not filed in the manner I have described above. If they were, they would have been processed as I have explained.

16. <u>Exhibits 1 and 2 are simply blank grievance forms which someone has typed up and never submitted. They contain no grievance number nor any stamp indicating their receipt</u>. . . .

21. <u>The document attached as Exhibit 3 would also appear to be a blank DC-135A [Inmate Requests to Staff Members] which someone filled out and never</u>

<u>submitted. It contains no response from me or any other staff member, nor does it show any other hallmarks of having been actually submitted.</u>

Declaration of Carol Scire (ECF No. 25-4) (emphasis added). The letter from Keri Moore, the SOIGA Grievance Review Officer, states:

> This office received an inquiry from you in regards to if Mr. Lawrence Gaines, KB2100 appealed any grievances to final review.
>
> I have reviewed our records and found that Mr. Gaines has <u>not</u> appealed any grievances to final review.

Letter from Keri Moore, Oct. 30, 2013 (ECF No. 25, Exhibit C)(emphasis added). Accordingly, the summary judgment record is completely void of any evidence that Plaintiff actually submitted to the institution the documents that are attached to his Complaint or that he has ever exhausted any of his grievances.

Next, Plaintiff offers that he could not exhaust because he was not allowed to have any writing paper, pens, or grievance forms while he was on long term restriction for his suicide attempt. (ECF No. 20.) DC-ADM 804, Section 2, Appeals - Inmate Responsibilities, clearly provides, in pertinent part, that:

> An exception to the 15 day filing requirement will be made only when the inmate notifies the Facility Manager / designee of the reason for the delay and it is determined that the delay in filing was caused by: . . . (3) Authorized Temporary Absence (ATA) for an extended period . . . .

DC-ADM 804, Section 2 - Appeals, Paragraph A(2)(c)(3). Plaintiff offers no explanation why he never notified the Facility Manager / designee that he needed an extended period of time in which to file his appeal.

In his third explanation, he seems to argue that, in violation of DC-ADM 803, he was not taken out of his cell in order to place his grievances in the lock box. (ECF No. 29.) Plaintiff, however, has failed to point to any specific section or page of DC-ADM 803 which indicates that

9

a Level 5 inmate must be taken out of his cell in order to place a grievance in the lock box. The Court has reviewed DC-ADM 803, effective December 23, 2011, and the only language contained in DC-ADM 803 specifically about lock boxes is as follows: "Outgoing mail shall NOT be placed in the lock-boxes designated for inmate grievances and/or DC-135 forms." Additionally, the Court has reviewed the version of DC-ADM 804 that was in effect in 2012 and the only language contained therein regarding Level 5 housing units and lock boxes is as follows:

> 14. Each Facility Manager /designee shall ensure that a lock-box designated for inmate grievance and/or **DC-135A** forms is installed in all Level 5 housing Units. The lock-box shall be placed in a location easily accessible to an inmate being escorted to an individual exercise unit. The inmate will be permitted to place the **DC-135A** and/or grievance in the lock-box. If an inmate chooses not to go to an individual exercise unit, he/she may have a staff member place the item in the lock-box.[4]

The Court does not find credible Plaintiff's assertions. The mere fact that Plaintiff's contradictory and self-serving representations have no evidentiary support is alone sufficient to grant summary judgment in favor of Defendants on the basis of Plaintiff's failure to exhaust. *See Small*, 2013 WL 4504761 at *4 (holding that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") Accordingly, the Court recommends that summary judgment be granted in favor of Defendant.

---

[4] DC-ADM 804 was revised on March 31, 2014, with an effective date of May 1, 2014, but also does not contain language suggesting that the inmate must be brought out of his cell to place his mail and/or grievances in the lock-box himself:

> 8. Each Facility Manager /designee shall ensure that a lock-box designated for inmate grievance and/or **DC-135A** forms is installed in all Level 5 housing Units. SRTU, and the inmate dining halls. The lock-box on the Level 5 housing unit shall be placed in a location easily accessible to an inmate being escorted to an individual exercise unit. The inmate will be permitted to place the **DC-135A** and/or grievance in this lock-box. If an inmate chooses not to go to an individual exercise unit, he/she may have a staff member place the item in the lock-box.

## III. Conclusion

For the reasons stated above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 16), which has been converted into a Motion for Summary Judgment, be granted on the ground that Plaintiff did not properly exhaust his administrative remedies pursuant to the PLRA.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed until **June 5, 2014,** to file Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: May 19, 2014

cc: LAWRENCE GAINES
KB-2100
PO Box 99991
SCI Pittsburgh
Pittsburgh, PA 15233

Samuel H. Foreman
Weber Gallagher Simpson Stapleton Fires & Newby
Email: sforeman@wglaw.com

Mallorie McCue
Weber Gallagher Simpson Stapleton Fires & Newby
Email: mmccue@wglaw.com